
FILED
2020 Jul-31  PM 01:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

|  |  |  |
|---|---|---|
| AMASON & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 7:20-cv-00159-LSC |
| | ) | |
| EVEREST NATIONAL | ) | |
| INSURANCE COMPANY, *et* | ) | |
| *al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF OPINION

Plaintiff Amason & Associates, Inc. ("Amason") brought this breach of contract action against Defendants Everest National Insurance Company ("Everest"), as well as Core Tuscaloosa 319 Grace, LLC ("Core-Grace") and Core Tuscaloosa 519-611 Red Drew, LLC ("Core-Red Drew") (collectively "Core Defendants"), in the Circuit Court of Tuscaloosa County, Alabama. Everest removed the action to this Court, asserting diversity jurisdiction and arguing that Core Defendants, the citizenship of which is unclear, were fraudulently joined in Amason's complaint based on the absence of any claims clearly directed against them. (Doc. 1.) Amason filed a motion to remand, contesting fraudulent joinder. (Doc. 5.) Furthermore, Amason has subsequently amended its complaint to assert new claims clearly directed against Core Defendants (doc. 13.), and the Court has

previously accepted that amendment (doc. 20).

Pending before the Court is Amason's motion to remand. (Doc. 5) The motion has been fully briefed and is ripe for review. For the reasons stated below, Amason's motion to remand (doc. 5) has been rendered moot by its first amended complaint (doc. 13). However, because the first amended complaint clearly asserts causes of action against non-diverse defendants, complete diversity does not exist, and this action is due to be remanded all the same.[1]

## I.   BACKGROUND

### A. Relevant Facts[2]

The events of this action began when Core Defendants entered into a construction contract with Amason as the general contractor to construct "The Hub," a student housing project located at 519 Red Drew Avenue, Tuscaloosa, Alabama. Pursuant to the construction contract, Core Defendants were required to purchase and maintain builder's risk coverage on an "all risk" coverage form. (Doc. 1 – Ex. 1 at ¶ 4.) The parties intended for the builder's risk policy to protect the interest of Amason and Core Defendants against property and casualty losses during

---

[1]     Also pending before the Court are Core Defendants' motion to dismiss the first amended complaint (doc. 19), and Amason's motion to strike Defendant Everest's sur-reply on the issue of remand (doc. 28). This Court declines to rule upon these remaining motions due to a lack of subject matter jurisdiction.

[2]     The following facts are taken from the factual allegations in Amason's initial complaint. (Doc. 1 – Ex. 1.)

the construction of The Hub. Core Defendants procured this risk coverage from Everest. The builder's risk policy acquired from Everest had an effective policy period of March 15, 2017 through August 15, 2018.

Construction of The Hub began on or about March 1, 2017. Its scheduled completion date was August 1, 2018, though sometime prior to July 5, 2018, the parties extended the scheduled completion date to August 16, 2018. Until July 5, 2018, construction proceeded on schedule.

On July 6, 2018, a "one thousand year rain event" struck the site of the construction project. (*Id.* at ¶ 8.) The heavy rain and resultant flash flooding caused extensive property damage to The Hub. This damage, in turn, led to significant delays and added costs in completing construction of The Hub.

Everest received timely notice of the loss to The Hub construction project and the losses that Amason incurred in completing construction. However, Everest has refused to pay Amason for certain losses claimed, asserting that such losses are not covered under the builder's risk policy.

## B. Procedural History

On December 31, 2019, Amason initiated this action against Defendant Everest and Core Defendants in the Circuit Court of Tuscaloosa County, Alabama. (Doc. 1 – Ex. 1.) On February 4, 2020, Everest removed the case to this Court, citing

diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (Doc. 1.) Because Core Defendants had not received service at the time of removal, they did not consent at that time. However, Everest argued that it did not need to show their consent or even prove diversity of citizenship between Core Defendants and Amason because Amason had fraudulently joined Core Defendants in the initial complaint. (*Id.*) Specifically, Everest asserted that, although the complaint named Core-Grace and Core-Red Drew as defendants and identified them in several factual allegations, the complaint did not clearly direct any claims against them. (*Id.*)

On February 17, 2020, Amason filed the instant motion to remand the action to state court, asserting that no fraudulent joinder had occurred and that Defendant Everest was required to demonstrate complete diversity of citizenship between Amason and Core Defendants. (Doc. 5.) On March 6, 2020, Core Defendants filed a notice of consent to the removal of this action to federal court. (Doc. 9.) In their notice, Core Defendants represented that none of their members are citizens of Alabama. (*Id.*) The same day Core Defendants filed their notice, Defendant Everest filed a supplement to its notice of removal, incorporating Core Defendants' notice of consent to show that complete diversity exists among the opposing parties in this action. (Doc. 10.)

On March 16, 2020, Amason filed its first amended complaint without leave of the Court, asserting several new claims clearly directed against Core Defendants. (Doc. 13.) On March 27, 2020, Core Defendants filed a motion to dismiss the first amended complaint, arguing that Core-Grace is not a party to the construction contract and that the only claims asserted against Core Red-Drew were duplicative of claims asserted by Amason in a separate action that was previously pending before this Court and has since been remanded. (Doc. 19.) On April 6, 2020, this Court entered an Order recognizing Plaintiff's first amended complaint as an implied motion for leave to amend and granting the same. (Doc. 20.)

On July 15, 2020, this Court entered an Order (doc. 26) noting that Plaintiff's first amended complaint rendered Defendant Everest's fraudulent joinder argument moot, and it directed Defendants to amend the notice of removal within seven days to clarify that Core Defendants, though not citizens of Alabama, also are not stateless entities over which this Court would lack diversity jurisdiction. *See, e.g.*, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989) (explaining that United States citizens who are domiciled abroad are citizens of no state and their "'stateless' status destroy[s] complete diversity" under 28 U.S.C. § 1332(a)). On July 22, 2020, Defendant Everest responded to this Court's Order, conceding its lack of knowledge as to whether Core Defendants are stateless entities but again

arguing that the Court may ignore the citizenship of Core Defendants due to their fraudulent joinder in the initial complaint. (Doc. 27.) Core Defendants filed no response. On July 23, 2020, Amason filed a motion to strike Everest's response, arguing that Everest's response constitutes an unauthorized sur-reply brief on the issue of remand. (Doc. 28.)

## II.   STANDARD

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). For removal to be proper, the court must have subject matter jurisdiction in the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). In addition, the removal statute must be strictly construed against removal, and any doubts should be resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Upon removal, a defendant bears the burden of establishing subject-matter jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).

## III.   DISCUSSION

This Court may exercise jurisdiction pursuant to 28 U.S.C. § 1332(a) only if

it finds that (1) complete diversity of citizenship exists among opposing parties, and (2) the amount in controversy exceeds $75,000. *See, e.g.*, *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Amason's initial complaint expressly sought monetary damages of $1,883,919.08, and no party disputes the good-faith basis for that amount. (Doc. 1 – Ex. 1.) Therefore, the amount-in-controversy requirement is met. *See* 28 U.S.C. § 1446(c)(2) ("[T]he sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy . . . .").

The Court now turns to whether complete diversity of citizenship exists in this action. For the purposes of diversity, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). "[A] limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). The notice of removal indicates that Plaintiff is an Alabama corporation with its principal place of business in Tuscaloosa, Alabama. (Doc. 1 – Ex. 1 at ¶ 1.) It also indicates that Defendant Everest "is a corporation organized and existing under and by virtue of the laws of the State of Delaware, having its principal place of business in New Jersey." (Doc. 1

at ¶ 5.) With respect to the citizenship of Core Defendants, however, the notice of removal fails to describe the citizenship of their members, and it thus fails to plead Core Defendants' citizenship. (*See id.* at ¶¶ 6, 7.) Furthermore, although Defendants have subsequently pleaded that none of Core Defendants' members are citizens of Alabama, (*see* docs. 9, 10), the Court has already addressed that this manner of pleading is insufficient, (doc. 26).[3] Without further evidence of Core Defendants' citizenship, their presence in this action destroys complete diversity and necessitates remand.

Rather than clarify Core Defendants' citizenship, Defendant Everest argues that Plaintiff's initial complaint fraudulently joined Core Defendants, and the Court should simply discount Core Defendants' citizenship altogether. In that event, the only remaining parties would be Amason and Everest, between whom complete diversity of citizenship indisputably exists.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs*, 154 F.3d at 1287. A removing party that asserts fraudulent joinder "has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the [non-diverse]

---

[3]    In a previous Order, this Court explained that negative allegations of Core Defendants' citizenship are "insufficient because they do not discount the possibility that Core Defendants are stateless, thereby destroying complete diversity" under 28 U.S.C. § 1332(a). (Doc. 26 at 2.)

defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the [non-diverse] defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). "The burden of the removing party is a 'heavy one.'" *Id.* (quoting *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981)).

In this action, Defendant Everest asserts only that Amason could not possibly recover on any cause of action against Core Defendants based on the factual allegations in the initial complaint. To prevail on its "no cause of action" theory, Defendant Everest must prove that there is "[no] possibility that a state court would find that the complaint states a cause of action against" either of Core Defendants. *Crowe*, 113 F.3d at 1538 (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir. 1983).

This Court assumes for the time being that Defendant Everest's fraudulent joinder argument is correct. The Court therefore ignores the citizenship of Core Defendants for the purpose of determining whether removal was initially proper in this action. Without Core Defendants, the only parties in this action are Amason, an Alabama citizen, and Everest, a citizen of Delaware and New Jersey. Thus, complete diversity exists, and Defendant Everest properly removed this action to federal court. However, even with those assumptions made, the Court's inquiry into its subject matter jurisdiction over this action does not end.

Regardless of whether Core Defendants were fraudulently joined in the initial complaint, the Court still must consider Amason's first amended complaint in determining whether diversity jurisdiction exists in this action. Under 28 U.S.C. § 1447(e), after a case has been properly removed to federal court, if a plaintiff seeks to amend the complaint in a way that would destroy subject matter jurisdiction, this Court has discretion to deny the amendment and maintain jurisdiction, or grant the amendment and remand the action to state court. Because the record does not indicate that diversity of citizenship exists between Amason and Core Defendants, Amason's pleading of new claims against Core Defendants would destroy jurisdiction in this action. Therefore, if the Court permits Amason's new claims against Core Defendants, it is obligated to remand this action. Although the Court previously accepted Amason's first amended complaint in an Order entered on April 6, 2020, without any objection from Defendants, the Court will now revisit whether to permit Amason's new claims against Core Defendants.

The first amended complaint purports to include: (1) a claim that Core Defendants breached the primary construction contract by failing to compensate Amason fully for the work that Amason performed and the remainder of the insurance coverage that Everest refused to pay; (2) a claim under the Alabama Prompt Pay Act, *Ala. Code* § 8-9-21, *et seq.*; (3) a claim for unjust enrichment; and

(4) a claim for *quantum meruit*. (*Id.* at 31–36.) Furthermore, the first amended complaint adds multiple new factual allegations pertinent to these claims, explaining the nature of the primary construction contract, the circumstances under which Amason performed under the contract, and the manner in which Core Defendants failed to compensate Amason as required under the contract. (*Id.* at 22–26.) Assuming these factual allegations to be true, it appears likely to the Court that the first amended complaint states plausible claims against Core Defendants.[4]

Moreover, Defendants have nowhere argued that all new claims against Core Defendants are meritless as a matter of law or fact. To be sure, Defendant-Core Grace has moved to dismiss all claims against it claiming it was not a party to the primary contract from which Amason's new claims arise. (Doc. 19.) Indeed, Amason's response to Core-Grace's motion concedes outright that Core-Grace is due to be dismissed from the case. (Doc. 21 at 1–2 n.1.)[5] However, that concession does not indicate that Amason's claims are implausible as applied to Defendant Core-Red Drew.

---

[4]     "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

[5]     As discussed below, this Court lacks jurisdiction over this action. Accordingly, the Court lacks authority to grant Defendant Core-Grace's motion to dismiss, regardless of Amason's concession that its claims against Core-Grace are due to be dismissed.

Defendant Core-Red Drew, for its part, has moved to dismiss the new claims against it on the basis that they are duplicative of identical claims brought by Amason against Core-Red Drew in a separate action. (Doc. 19.) Said action was styled as *Amason & Associates, Inc. v. Core Tuscaloosa 519-611 Red Drew, LLC, et al.* ("*Amason v. Core-Red Drew*"), No. 7:20-cv-00237-LSC. However, on July 14, 2020, this Court entered an Order remanding *Amason v. Core-Red Drew* to the Circuit Court of Tuscaloosa County, Alabama. (Doc. 63 in No. 7:20-cv-00237-LSC.) As a result, Defendant Core-Red Drew's argument that the new claims in the first amended complaint are duplicative of those in another federal action is now moot. Following remand, a state court could consolidate this action with *Amason v. Core-Red Drew.* This potential consolidation would aid in simplifying what this Court has already referred to as a "convoluted web of legal actions crisscrossing between federal and state courts." (Doc. 62 at 14 in No. 7:20-cv-00237-LSC.)

Given the nature of Amason's new claims against Core Defendants and the greater judicial efficiency that could result from remand, the Court finds that its prior acceptance of Amason's first amended complaint was appropriate. The Court's acceptance of Amason's first amended complaint renders the motion to remand (doc. 5) moot, but it also eliminates complete diversity of citizenship. Accordingly, the Court lack subject matter jurisdiction over this action.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand (doc. 5) is moot, and this action is due to be remanded due to the Court's lack of subject matter jurisdiction to hear Amason's new claims against Core Defendants. An order consistent with this Opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on July 31, 2020.

L. Scott Coogler
United States District Judge

199455